# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## AT LEXINGTON

**CIVIL CASE NO. 09-388-KKC-CJS**

**EARL DOUGLAS WILLIAMS**                                             **PETITIONER**

**v.**                          <u>**REPORT AND RECOMMENDATION**</u>

**EASTERN KENTUCKY**
**CORRECTIONAL COMPLEX**                                          **RESPONDENT**

\* \* \* \* \* \* \* \* \* \*

On December 2, 2009, Petitioner Earl Douglas Williams filed a pro se Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus. (R. 1). On March 29, 2010, the United States filed its Answer (R. 13), as well as a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment (R. 19), to which Petitioner filed a Response. (R. 20). Having all relevant documents before the Court, the matter is now ripe for consideration and preparation of a Report and Recommendation. 28 U.S.C. § 636(b). For the reasons set forth below, it is recommended that the United States's Motion to Dismiss (R. 19) be **granted**, and Petitioner's § 2254 petition (R. 1) be **denied**.

## I.      Factual Background

In November 2004, Petitioner was convicted by a jury in the Boyle Circuit Court for first degree assault and second degree persistent felony offender. He was sentenced to twenty years imprisonment, which was enhanced to twenty-five years because of the second degree persistent

felony offender conviction. On direct appeal, the Kentucky Supreme Court, in affirming the

conviction, provided the following factual history:[1]

> On the night of January 29, 2002, Appellant [Petitioner Williams], Steven Durham, and Galen Eisenbeis arrived at the home of the victim, David Gorley, to discuss his firing of Durham from a minor repair job to Gorley's home. Gorley had been dissatisfied with Durham's performance and informed Durham that he would no longer be required to finish the job of installing windows at Gorley's house. Durham was angered by Gorley's actions, and Gorley testified that Durham had told him on the phone that "You can't run me off a job."
>
> . . . .
>
> Testimony from James Wilburn, Jr. revealed that about 5:30 p.m. on January 29, 2002, Durham and he had a conversation in Appellant's presence. Durham and Appellant (and two other men Wilburn did not know) stopped and spoke with Wilburn for a while at Wilburn's residence. During their conversation, Wilburn mentioned that he needed to go to Gorley's store, and then Durham responded, "Piss on David Gorley." Wilburn also stated that Durham hated "the son of a bitch" and that Durham said if Gorley fooled with him, he'd shoot him.
>
> When the men arrived at Gorley's home, Gorley told Durham to leave. Gorley testified that he saw a gun in Appellant's hand so he retreated into his bedroom to get his own gun. Upon returning, he found Durham and Eisenbeis in his kitchen, where Durham was holding Gorley's girlfriend, Glenda Dinsmore, by the arms after she had tried to call 911. When Gorley asked Durham what he was doing, Durham released Dinsmore, and Gorley again told Durham to leave. After Durham and Gorley exchanged words, the men finally left the Gorley residence.
>
> Later that evening, Appellant drove Eisenbeis and Durham back toward Gorley's home, parking the truck at the foot of Gorley Road. Eisenbeis testified that, as Appellant exited the vehicle, he saw a pistol in his waistband.
>
> Gorley, suspecting the men might return, went to retrieve a deer rifle. As he was loading the weapon, he was shot in the back through a window. The weapon was never recovered by police.
>
> Appellant was arrested around 4:00 a.m. on January 30, 2004. During an audiotaped interview, Appellant admitted being at Gorley's house, but denied having a pistol. Appellant claimed that the argument erupted because Durham thought

---

[1]Factual findings made by the state courts based on the trial record are entitled to a presumption of correctness that may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Gorley had stolen Durham's marijuana, and Appellant claimed that Gorley had "put out a hit" on him and Durham. Appellant later admitted to having a .22 caliber pistol in his hand while he and the other men were at Gorley's residence on the evening of the alleged crime. However, he never admitted to shooting Gorley.

Kentucky State Police also arrested Durham upon suspicion of involvement in Gorley's shooting. A search of Durham's vehicle uncovered a .22 caliber handgun, marijuana, and a set of scales. Durham told police he had not been at Gorley's house that night. He later recanted his story and admitted to having been at Gorley's house, but told police he and Gorley had an argument over a satellite dish. Durham was subsequently indicted for first degree assault, prompting his refusal to testify at Appellant's trial. However, a jury of the Boyle Circuit Court acquitted Durham of the charges on September 20, 2005.

Eisenbeis was indicted for first degree assault. However, as the result of a plea agreement, Eisenbeis testified against Appellant in exchange for a diversion for five years.

(R. 13-3, at 37-39; *Williams v. Commonwealth*, No. 2004-SC-001133-MR, 2006 WL 1045461 (Ky. April 20, 2006)) (footnote omitted).[2] Petitioner was convicted on November 18, 2004, and he was sentenced to a total of twenty-five years imprisonment on November 29, 2004. (R. 13-3, at 41).

Petitioner's primary argument for post-conviction relief is that the trial court erred in admitting hearsay evidence and that these errors constituted a violation of his right to confront witnesses under the Confrontation Clause of the Sixth Amendment. Most of the statements Petitioner complains of were made by codefendant Durham and introduced through the testimony of other witnesses. The Kentucky Supreme Court detailed the testimony as follows:

During Appellant's trial, several prosecution witnesses testified that Appellant shot Gorley that evening.

Eisenbeis testified that when he asked Appellant what was going on, Appellant replied, "I popped David. He's a dead man." He also said he waited for over an hour in Appellant's truck on the night of the shooting. Eisenbeis testified

---

[2]It appears the Kentucky court's opinion mistakenly states Petitioner's arrest was in 2004; Petitioner was arrested in 2002.

that when Appellant returned to the truck, he no longer had the pistol with him, and his clothes were wet and muddy. According to Eisenbeis, the gun was buried somewhere in an adjacent county. However, when Eisenbeis testified that Durham told him Appellant had shot Gorley, Appellant objected and moved for a mistrial. The trial judge sustained the objection, denied the motion for a mistrial, and admonished the jury to disregard Eisenbeis' statement.

Det. Owens testified that Durham told him, during an interview following his arrest, that Williams was not with him and Eisenbeis when they went to Gorley's residence. Appellant objected on the ground of inadmissible "investigative hearsay." However, because Det. Owens received contradictory statements during his investigation, such as Eisenbeis' statement that Appellant was at Gorley's home, the trial court overruled the objection.

Det. Owens also testified regarding statements made to him by Kentucky State Trooper Eric Taylor. Trooper Taylor told Owens that the gunshot wound sustained by Gorley was from a large caliber weapon and that the .22 caliber revolver taken from Durham's truck had not been fired (i.e. was "clean"). Det. Owens further testified that a bullet fragment taken from Gorley's hand was not in a condition to determine either its caliber or from what weapon it had been fired. Appellant failed to object and thus failed to preserve this issue for appeal.

James Wilburn testified that Durham, in Appellant's presence, told him he hated Gorley and that "if [Gorley] fooled with him, he'd shoot him." Appellant again objected on grounds of hearsay, which the trial court overruled, finding the testimony showed Durham's state of mind and knowledge.

Several witnesses testified that Appellant went to the home of his sister, Delena Smith, some time after Gorley was shot. Delena heard over a radio scanner that police were looking for Appellant, Durham, and Eisenbeis. When she asked Appellant what was going on, Appellant told her that she should not worry about Durham (her son) and that Durham was "not involved in what had went down." Delena also inquired about her gun. Appellant told her that he "took care of it."

Bea Shelton, who was also at Delena's home, testified she told Appellant and Delena that they could come to her house for coffee. Shelton testified that Appellant's clothes were muddy and wet when he arrived at Delena's house and that Delena had said to Appellant, "I pray to God. I pray to God that he don't die. Doug, do you think he's dead?" According to Shelton, Appellant responded, "Yes, he's a dead man." Shelton asked Appellant if he really thought he killed Gorley, and he replied, "I've deer hunted too much. He's a dead man." Shelton also stated that Appellant also told her and Delena that he thought Gorley had been shot in the heart.

(R. 13-3, at 37-41) (footnote omitted).

## II.  Procedural History

Petitioner appealed his conviction to the Kentucky Supreme Court, alleging that the trial court erred by: (1) admitting incriminating statements made by a non-testifying codefendant; (2) admitting "investigative hearsay;" and (3) considering a felony conviction for which Petitioner served no time in prison as sufficient for a second degree persistent felony offender.  (*Id.* at 36-37). That court rejected Petitioner's arguments and affirmed the conviction on April 20, 2006.  (*Id*. at 37).

On November 27, 2006, Petitioner filed a post-conviction motion pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42, raising five claims of ineffective assistance of counsel.  (R. 13-4, at 3).  The trial court denied his motion, and Petitioner appealed.  (*Id*.).  On April 24, 2009, the Kentucky Court of Appeals affirmed the trial court's denial of Petitioner's RCr 11.42 motion.  (R. 13-5, at 57).  Petitioner did not file a motion for discretionary review in the Kentucky Supreme Court.[3]

On December 2, 2009, Petitioner filed the instant federal Petition for Writ of Habeas Corpus. (R. 1).  In his filings, he raises eight grounds for relief, including four claims of trial court error, three claims of ineffective assistance of counsel, and one claim of cumulative error.[4]

---

[3]Petitioner's failure to file a petition for discretionary review does not render his claims unexhausted. *See* RCr 12.05 (providing that it is no longer necessary to file a motion for discretionary review with the Kentucky Supreme Court to exhaust state post-conviction remedies); *see also Adams v. Holland*, 330 F.3d 398, 401-403 (6th Cir. 2003) (discussing the "opt-out" language from *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), in relation to a Tennessee rule nearly identical to RCr 12.05); *Willis v. Haney*, No. 5:07cv-00157-R, 2008 WL 1743509, at *9 (W.D. Ky. April 11, 2008).

[4]Although Petitioner only recites seven grounds for relief in his Petition, he asserts an additional ineffective assistance of counsel claim in his supporting memorandum.

## III.    Analysis

The Supreme Court has interpreted the Antiterrorism and Effective Death Penalty Act (AEDPA) as requiring federal courts to review state court judgments with deference but to conduct an independent review of federal law. *Williams v. Taylor*, 529 U.S. 362, 389 (2000). The court must first determine that the relevant federal legal rule was clearly established at the time the conviction became final. *Id.* at 390. If it was, the federal court must determine whether the state-court decision was "contrary to, or involved an unreasonable application" of the law. *Id.* at 391.

"A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010) (quoting *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009)) (internal quotation marks and citation omitted). It is an unreasonable application "if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case, or if it either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Id.* (quoting *Murphy*, 551 F.3d at 494). Thus, the state court's application of Supreme Court precedent must be objectively unreasonable in order to require habeas relief. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Under AEDPA, the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## A.     Procedurally Defaulted Claims

Two of Petitioner's claims have been procedurally defaulted, barring this Court's review of them.  Procedural default is triggered  when a petitioner fails to comply with a state procedural rule.  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).   If state courts rely on this procedural failure to decline to address the merits of the petitioner's habeas claim, and if the state procedural rule is an adequate and independent state ground that precludes relief, the federal court will find the habeas claim to be procedurally defaulted.  *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Williams*, 460 F.3d at 806 (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).   This determination bars the federal court from addressing the merits of the claim unless the petitioner is able to demonstrate cause for the failure to follow the rule and that he was actually prejudiced by the alleged constitutional error, or that "failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman,* 501 U.S. at 750.

### 1.     Petitioner's Claim that Counsel was Ineffective for Failing to Present Mitigating Evidence

First, Petitioner's allegation that counsel provided ineffective assistance by failing to introduce mitigating evidence during the sentencing stage has been procedurally defaulted.  Under Kentucky law, a petitioner may file one post-conviction motion for relief, and he must include all alleged grounds within that motion, as successive motions are prohibited.  RCr 11.42(3); *McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997).  Petitioner concedes that he failed to include this argument within his RCr 11.42 motion, thus violating this rule.  (R. 20, at 7).

Furthermore, the Kentucky Court of Appeals enforced this rule by declining to address the merits of Petitioner's claim, recognizing that "[a]n appellate court may not review an alleged error

in the absence of a ruling on the alleged error by the trial court." (R. 13-5, at 61) (citing *Todd v. Commonwealth*, 716 S.W.2d 242, 251 (Ky. 1986)). Petitioner argues that the appellate court's decision was incorrect because he raised the argument during the evidentiary hearing for his RCr 11.42 motion, which sufficiently preserved it for federal review. (R. 20, at 7). A review of his Reply brief to the Kentucky Court of Appeals reveals that Petitioner made this same argument to that court. (R. 13-5, at 55). However, when the court denied Petitioner's appeal on the issue for failure to include the claim in his initial motion, the court implicitly rejected this argument. A federal court is required to accept a state court's interpretation of procedural law, even if the appellate court's interpretation of this procedural rule was incorrect.[5] *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000) (noting that the federal court was required to accept the state court's interpretation of the law, because even if in error, this would be a state law error and not cognizable on habeas review). Therefore, this Court is required to assume that the state court's conclusion that Petitioner failed to comply with the state procedural rule and its subsequent enforcement of the procedural rule is correct. *See Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

Finally, this constitutes an adequate and independent state ground because the appellate court solely relied on this well-established state procedural rule for denying Petitioner's claim. *See Coleman*, 501 U.S. at 740; *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (noting that

---

[5]Furthermore, it does not appear that the Kentucky appellate court's interpretation of the rule was incorrect. Petitioner cites to *Bowling v. Commonwealth*, 981 S.W.2d 545, 552 (Ky. 1998), in support of his argument that raising the argument during the evidentiary hearing was sufficient to preserve the issue for appellate review. (R. 20, at 7). In that case, the Kentucky Supreme Court relied on RCr 10.26 to examine a claim raised by the petitioner even though it was improperly preserved for appeal. However, while RCr 10.26 gives a court *discretion* to review "a palpable error," it does not *require* the court to review it. *See* RCr 10.26 (providing that such an error "may be considered"). Moreover, Petitioner never moved the Kentucky courts to consider palpable error pursuant to RCr 10.26, and the fact that he invoked this rule in regard to another claim demonstrates that he was clearly aware of its potential application.

denial of review for failure to comply with well-established procedural rules constituted an adequate and independent state ground). Accordingly, this claim has been procedurally defaulted unless Petitioner can demonstrate cause and prejudice, or that a miscarriage of justice will result should the Court not consider his claims.

Petitioner fails to make the requisite showing. In fact, he provides no reason that he failed to include the argument in his RCr 11.42 motion. As Petitioner fails to establish cause, the Court need not address whether actual prejudice resulted. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) (declining to address whether prejudice occurred when the petitioner failed to establish cause). Morever, Petitioner also fails to assert that a miscarriage of justice will occur absent review, as this requires Petitioner to establish that the "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496 (1986). Petitioner's only argument is that counsel failed to offer some mitigating evidence, but this statement does not explain how failure to consider this mitigating evidence would lead to a miscarriage of justice nor can it be interpreted as an actual innocence claim. As Petitioner has failed to satisfy his burden, this claim has been procedurally defaulted.

### 2. Petitioner's Alleged Confrontation Clause Violation Resulting from Detective Owens's Testimony Regarding the Caliber of the Weapon

Petitioner's claim that a Confrontation Clause violation occurred when Detective Owens provided hearsay testimony as to statements regarding the size of the wound, the useability of the bullet fragment, and the fact that Petitioner's codefendant's gun was found without any fingerprints has also been procedurally defaulted. In his brief to the Kentucky Supreme Court, Petitioner recognized that he failed to preserve this issue for review, but he urged that court to review for

palpable error under RCr 10.26. (R. 13-2, at 22, 28). The Kentucky Supreme Court acknowledged Petitioner's failure to preserve this issue for review, and then it proceeded to review for palpable error. (R. 13, at 50). Review for plain error constituted enforcement of the procedural rule at issue. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Cook v. Webb*, No. 6:06-cv-238-KKC, 2007 WL 1309681, at *7 (E.D. Ky. May 1, 2007). Finally, the Kentucky Supreme Court relied only on state law in rejecting Petitioner's appeal, and failure to comply with a well-established procedural rule that is regularly enforced will generally constitute an adequate and independent state ground prohibiting habeas review. *See Coleman*, 501 U.S. at 740; *Lundgren*, 440 F.3d at 763.

Furthermore, Petitioner fails to establish cause and prejudice or miscarriage of justice. In fact, Petitioner ignores his failure to preserve this issue for review and instead focuses his arguments solely on attacking the Kentucky Supreme Court's palpable error analysis. However, this is a determination of state law, which is not properly reviewable by this court. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Danner v. Motley*, 448 F.3d 372, 375 (6th Cir. 2006). This Court must defer to a state court's interpretation of state law. *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (noting that "[f]ederal courts are obligated to accept as valid a state court's interpretation of state law"). Even after the United States raised the issue of procedural default in its Motion to Dismiss, Petitioner still failed to argue cause and prejudice in his Reply brief. Therefore, Petitioner has failed to satisfy his burden, and this claim has been procedurally defaulted, barring this Court's review of the merits.

### B. Claims of Trial Court Error

Petitioner alleges three claims of trial court error, but all are based on his allegation that he was denied his rights under the Confrontation Clause of the Sixth Amendment. Specifically,

Petitioner alleges that the trial court erred by admitting statements made by Durham, a non-testifying codefendant, through the testimony of: (1) Galen Eisenbeis, (2) Detective Owens, and (3) James Wilburn. [6]

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. U.S. Const. amend. VI. The Supreme Court has determined that this Confrontation Clause prohibits admission of testimonial, out-of-court statements made by witnesses, offered to prove the truth of the matter asserted, unless the witness is unavailable and the defendant has previously had the opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).[7] Accordingly, if the statement is not testimonial, the Confrontation Clause cannot be violated by the introduction of the statement. *See Davis v. Washington*, 547 U.S. 813, 821 (2006) (noting that only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause"). Although the Supreme Court has not defined "testimonial," the Sixth Circuit has broadly defined it to include "any statement made in circumstances in which a reasonable person would realize that it likely would be used in investigation or prosecution of a crime." *United States v. Cromer*, 389 F.3d 662, 673 (6th Cir. 2004) (internal quotation marks and citation omitted). When a statement is nontestimonial, its admissibility is determined only by application of evidentiary rules. *Davis*, 547 U.S. at 821; *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009).

---

[6]Because Petitioner states in his Reply that the prosecutor's statements cannot be considered inadvertent or accidental, but otherwise fails to support this conclusion, this vague argument will not be addressed.

[7]Because *Crawford* was decided before Petitioner's trial and conviction, the law governing the ineffective assistance of counsel claims was clearly established at the time the conviction became final. *See Williams*, 529 U.S. at 390.

A Confrontation Clause violation occurs when a testimonial statement or "confession of a nontestifying codefendant that implicates the accused is introduced into evidence at their joint trial . . . even if the jury is instructed to consider the confession only as evidence against the codefendant." *United States v. Cope*, 312 F.3d 757, 780 (6th Cir. 2002) (citing *Bruton v. United States*, 391 U.S. 123, 137 (1968)); *see also Johnson*, 581 F.3d at 326 (recognizing that because *Bruton* is premised on the Confrontation Clause, the rule applies only to testimonial statements). However, this rule only applies if the testimonial statement is facially incriminating. *Richardson v. Marsh*, 481 U.S. 200, 208 (1987).

Even if a Confrontation Clause violation occurred, these errors are subject to harmless error review. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007). This requires the reviewing court to determine whether the error "had [a] substantial and injurious effect or influence in determining the jury's verdict."[8] *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)) (internal quotation marks omitted). Five factors are relevant to determining whether an error was harmless: (1) "the importance of the witness' testimony in the prosecution's case," (2) "whether the testimony was cumulative," (3) "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points," (4) "the extent of cross-examination otherwise permitted," and (5) "the overall strength of the prosecution's case." *Vasquez*, 496 F.3d at 575 n. 8 (quoting *Van*

---

[8] Although *Brecht* was decided pre-AEDPA, the Supreme Court has determined that this standard still applies to the review of harmless error in a habeas proceeding. *See Fry v. Pliler*, 551 U.S. 112, 119-20 (2007) (concluding that courts should apply the *Brecht* standard to habeas proceedings involving harmless error review even in light of the AEDPA, as the *Brecht* review subsumes AEDPA review).

*Arsdall*, 475 U.S. at 684). Accordingly, habeas relief should be granted only if a petitioner establishes "actual prejudice." *Brecht*, 507 U.S. at 637.

### 1. Eisenbeis's Testimony Regarding Durham's Statements

Petitioner alleges that his confrontation right was violated by Galen Eisenbeis's trial testimony that Durham told him Petitioner shot Gorley. The Kentucky Supreme Court appears to have concluded that an error occurred under *Bruton* (R. 13-3, at 44), although it characterizes the statement as nontestimonial. (*Id*. at 42). Ultimately, that court rejected Petitioner's argument that any violation mandated reversal, instead applying a harmless error analysis. (*Id*. at 44). The court concluded that the error was harmless, primarily because it found the evidence to be cumulative.

> Most significant in this respect is the testimony of Bea Shelton and Galen Eisenbeis. Shelton testified that when she asked Appellant if he really thought he killed Gorley, Appellant replied, "I've deer hunted too much. He's a dead man." Shelton also testified that Appellant told his sister, Delena Smith, during the same conversation that Gorley was shot in the heart. Eisenbeis also testified that when Appellant returned to the truck that night, he told Eisenbeis that he "popped David" and that Gorley was "a dead man." The improperly admitted statement was thus cumulative of other properly admitted evidence.

(*Id*.).

Petitioner accepts the court's conclusion that an error occurred, but he argues that introduction of the statement was not harmless error under the *Van Arsdall* factors. The United States argues there was no error because the statement was not testimonial, as Durham casually made the statement to his friend, and he would not likely suspect that the statement would be used as testimony. (R. 13-1, at 21). According to the United States, because the statement was nontestimonial, no Confrontation Clause violation occurred. The United States further argues that

13

even if the statement were testimonial, its introduction constituted harmless error because it was cumulative and substantial evidence supported the conviction.

The Kentucky Supreme Court properly concluded that the statement was inculpatory, which is required for a constitutional violation under *Bruton*. However, before any Confrontation Clause violation can occur, including a *Bruton* violation, the statement must be testimonial. *Johnson,* 581 F.3d at 326. Although the Kentucky court seemed to implicitly conclude that the statement was nontestimonial (*see* R.13-3, at 42, 47-48), it also concluded that an error occurred. (*Id*. at 44). Therefore, to the extent that the Kentucky Supreme Court concluded that the statement was nontestimonial, a Confrontation Clause violation could not occur, and any conclusion that a *Bruton* violation occurred is contrary to federal law.

That aside, the court properly determined that the statement was nontestimonial. Durham made the statement to a friend, and it is unlikely that he expected the statement to be later used in a prosecution. *See United States v. Franklin*, 415 F.3d 537, 545 (6th Cir. 2005) (concluding that statements made to a friend were nontestimonial). As the statement was nontestimonial, there could be no constitutional violation.[9]

However, even if the statement were viewed as testimonial, thus giving rise to a constitutional violation, the error was harmless because Petitioner has not demonstrated that the error resulted in "actual prejudice." *See Brecht*, 507 U.S. at 637. First, this statement was relatively unimportant in light of all of the other evidence. Although Petitioner argues that it was unique

---

[9]The Court further notes that the statement was not admitted into evidence, as the trial court sustained the objection and gave the jury a limiting instruction. As no Confrontation Clause violation occurred, admission of the statement was only subject to the Rules of Evidence, which the court applied here to deny introduction of the statement.

because it constituted "eye witness testimony," two other witnesses, Shelton and Eisenbeis, provided testimony that Petitioner made statements directly implicating himself as the shooter, if not directly admitting this fact. A jury likely would find a confession more important than alleged eyewitness testimony. Furthermore, the fact that two other witnesses testified to the same information included in the statement at issue–that Petitioner shot Gorley–renders the evidence cumulative. Finally, Petitioner's other confessions, along with other circumstantial evidence, reflect that the prosecution's case was relatively strong. In light of the two confessions, Petitioner fails to establish that this one statement that he committed the assault actually prejudiced him. Therefore, although Petitioner did not have the opportunity to cross-examine Durham, the remaining factors weigh in favor of finding that the error was harmless, and Petitioner's claim fails.

### 2.     Detective Owens's Testimony Regarding Durham's Statements

Petitioner also alleges a violation of the Confrontation Clause occurred when Detective Owens testified that Durham, in response to questioning, stated that Petitioner was not at Gorley's house when the altercation between Durham and Gorley occurred. The Kentucky Supreme Court, in examining this point, declared that:

> We find the trial court erred in admitting these statements as no hearsay exception can be applied to allow their admission and because the statements were testimonial in nature and Appellant had no opportunity to cross-examine Durham. However, we find the error to be harmless beyond a reasonable doubt as Appellant was not prejudiced by the admission of the statement.

(R. 13-3, at 45). Nevertheless, that court then analyzed the applicability of *Crawford v. Washington,* 541 U.S. 36 (2004), and concluded:

> However, Durham's statements to Det. Owens are not the type of statements to which the rationale of *Crawford* is applicable as they do not inculpate Appellant.
> . . . .

15

> Regardless, the admission of Durham's testimonial statements by way of Det. Owens was harmless error, as the outcome of the trial would have been the same despite the error.

(*Id*. at 47-48). Thus, while it is unclear whether the Kentucky Supreme Court concluded that a constitutional error occurred, that court unambiguously determined that any error was harmless. Petitioner interprets the Kentucky court's decision as concluding that an error occurred, but he argues that the statement was inculpating, which is his reason that the introduction of the statement was not harmless error. The United States does not address this specific contention.[10] The focus herein is on whether the error was harmless.[11]

The error was harmless because Petitioner fails to demonstrate actual prejudice. Petitioner's arguments place much weight on this facially neutral statement and its alleged effect on the jury. These inferences are unreasonable, and there is no reason to conclude that introduction of this

---

[10] While the United States does not seem to address this specific argument in its Response, the United States does argue that Petitioner's claim regarding the testimony of Detective Owens was procedurally defaulted. However, procedural default does not apply to all of the statements offered by Detective Owens, as the Kentucky Supreme Court addressed this particular argument on the merits, and there is no other indication of procedural default.

[11] To the extent that the Kentucky Supreme Court concluded that *Crawford* did not apply because the statement was not inculpating to Petitioner, (*see* R. 13-3, at 48), this conclusion is contrary to federal law. While a *Bruton* violation requires the statement to be incriminating, *see Richardson*, 481 U.S. at 208, *Crawford* does not. Instead, *Crawford* explains that what initiates a Confrontation Clause violation analysis is whether the statement is testimonial. *See Davis*, 547 U.S. at 821 (recognizing that "the critical portion of [*Crawford's*] holding . . . is the phrase 'testimonial statements'"); *United States v. Pugh*, 273 F. App'x 449, 454 (6th Cir. 2008) (recognizing that the initial question under *Crawford* is whether the statement is testimonial). Whether a statement is testimonial depends on whether the declarant expects that his statements may be later used at trial, not whether it is incriminating. *Cromer*, 389 F.3d at 673-74. Specifically, statements made during a police interrogation are deemed to be testimonial. *Davis,* 547 U.S. at 822.
Here, the statement is testimonial because it was made to Detective Owens, and it appears likely that Durham, who was a suspect, would reasonably expect any statement he made to a police officer to be used in the investigation or later at trial. Petitioner never had the opportunity to cross-examine Durham, who was unavailable due to his assertion of his Fifth Amendment privilege. But as the Kentucky Supreme Court ultimately determined, any arguable error is irrelevant because, as that court properly concluded, any error was harmless.

statement actually prejudiced Petitioner. First, the statement does not imply that Petitioner participated in the crime or was working with Durham. While Petitioner argues that the statement was important and damaging because it suggests that Durham and Petitioner were working together and that Durham was somehow covering for Petitioner, the statement, in fact, does just the opposite by removing Petitioner from the scene of the crime. Moreover, it is more likely that the jury would believe the testifying witnesses over Durham's statements, which renders the statement less significant. Furthermore, Petitioner and Eisenbeis both testified that Petitioner was present at Gorley's residence that night, thereby challenging Durham's statements. Accordingly, as this testimony does not actually prejudice Petitioner, any error resulting from introduction of these statements was harmless. Therefore, this claim fails.

### 3. James Wilburn's Testimony as to Durham's Statements

Petitioner's next claim is that the introduction of James Wilburn's testimony that Durham stated he "hated the son of a bitch, and if [Gorley] fooled with him, he'd shoot him" constituted a Confrontation Clause violation. The Kentucky Supreme Court determined that no Confrontation Clause violation occurred, rejecting Petitioner's claim that *Bruton* applied.

> *Bruton, supra*, applies only to statements which tend to incriminate or inculpate the defendant. In this case, Durham's statements actually inculpate or incriminate himself, not Appellant.

(R. 13-3, at 49). That court further affirmed the trial court's evidentiary ruling:

> We find the trial court's ruling to be correct, as KRE 803 excludes such statements from the hearsay rules. Durham's statements, through Wilburn's testimony, show his then existing state of mind or emotion concerning his unrepentant feelings toward Gorley. It is inconceivable how Durham's state of mind might be transposed to Appellant, rendering them inculpatory in the process.

(*Id.*).

In support of his argument, Petitioner attempts to create an inferential chain of statements that he claims render Durham's statement incriminating as to him, thus resulting in a constitutional violation under *Bruton*. According to Petitioner, these statements are incriminating because (1) the prosecution asserted that Durham told Gorley that Petitioner would not shoot Gorley unless Durham told him to; (2) Durham made negative statements about Gorley; (3) Durham's negative statements can somehow be imputed to Petitioner because he was silent when they were made; and (4) Durham's statement that he controlled Petitioner combined with his statements of ill-will towards Gorley somehow suggest that Petitioner was guilty of shooting Gorley. Conversely, the United States argues that the statement was not inculpating, and furthermore, it was nontestimonial, and so no Confrontation Clause violation occurred.

The Kentucky Supreme Court's conclusion that no constitutional error occurred when this statement was introduced into evidence is not contrary to, nor an unreasonable application of, federal law because no violation occurred under either *Bruton* or *Crawford*. That court's conclusion that the statement was not inculpating is correct. Here, Durham's statements can only demonstrate that he hated Gorley. These statements do not suggest that Petitioner was involved with Gorley's shooting, and Petitioner's attempt to argue that the statement was incriminating in light of the other facts of the case or as an admission by silence does not establish a violation under *Bruton*. *See Richardson*, 481 U.S. at 208 (recognizing that *Bruton* did not apply when the confession was not incriminating on its face and "became so only when linked with evidence introduced later at trial").

However, and even more fundamentally, no violation could occur because the statements were not testimonial. *See Johnson*, 581 F.3d at 326 (noting that a *Bruton* violation cannot occur unless the statement is testimonial). Durham made the statement to an acquaintance during a casual

18

conversation before Gorley was even assaulted. Under this scenario, it is unlikely that he ever expected it to be used in an investigation or prosecution of Petitioner. *See Cromer*, 389 F.3d at 673-74 (noting that "a statement made in the course of going about one's ordinary business, made before the criminal act has occurred" is nontestimonial).

Because the statement was nontestimonial, evidentiary rules are looked to in determining whether the admission of the statement was appropriate. The Kentucky Supreme Court concluded that this statement fell within the hearsay exception provided under Kentucky Rule of Evidence 803, and subsection (3) provides the exception for the declarant's state of mind. As the statement was a direct reflection of Durham's feelings towards Gorley, this application of the rule is reasonable, and the ruling is entitled to deference by this Court. *See Allen*, 845 F.2d at 614. Therefore, no Confrontation Clause violation occurred, and Petitioner's claim fails.

### C.    Ineffective Assistance of Counsel Claims

Petitioner also alleges two ineffective assistance of counsel claims, claiming that counsel was ineffective for: (1) failing to investigate and call exculpatory witnesses, and (2) failing to adequately cross-examine Eisenbeis. The Supreme Court has established a two-prong test for ineffective assistance of counsel claims, which requires proof of both attorney error and prejudice resulting from that error. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[12] The first prong requires a showing that counsel was constitutionally deficient. *Id.* at 687. In reviewing counsel's performance, a court must determine whether "in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Id.* at 690. Additionally, a petitioner must

---

[12]Because *Strickland* was decided in 1984, which was well before Petitioner's trial and conviction, the law governing the ineffective assistance of counsel claims was clearly established at the time the conviction became final. *See Williams*, 529 U.S. at 390.

rebut the strong presumption that "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689-90 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The second prong of the *Strickland* test requires a showing of prejudice from the attorney's error. *Id.* at 687. To establish prejudice, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### 1.     Counsel's Alleged Failure to Investigate and Call Exculpatory Witnesses

Petitioner's first claim is that counsel allegedly failed to investigate and call any of four exculpatory witnesses to rebut Shelton's testimony. Petitioner argues that at least one of four other individuals were present during Petitioner's conversation with Shelton and therefore could have rebutted Shelton's claim that Petitioner made incriminating statements. The United States argues that Petitioner fails to satisfy the prejudice prong of the *Strickland* test.

The Kentucky courts addressed Petitioner's argument. The trial court rejected his claim, stating:

> Movant also argues that counsel failed to call witnesses to rebut Bea Shelton's testimony. The Supreme Court in *Strickland* points out that a defendant, in his motion for relief under RCr 11.42, "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." In light of the fact that several of the rebuttal witnesses cited by the defendant were intermittently absent during the conversation that was the subject of Ms. Shelton's testimony, this Court cannot find that there is "reasonable probability" that the outcome of the trial would have been different.

(R. 13-4, at 50). The Kentucky Court of Appeals affirmed the trial court's decision, providing:

> Williams offers no affidavits of witnesses to rebut Shelton's statement. Instead, he simply suggests trial counsel should have interviewed the witnesses and that such interviews would have changed the outcome of the trial. We do not agree

that there is a reasonable probability based on the record that such would be the case. Therefore, we agree with the trial court on this issue.

(R. 13-5, at 59).

The decisions of the Kentucky state courts were not contrary to, nor an unreasonable application of, federal law. The record does not reflect why counsel chose not to call these witnesses nor the extent of any investigation performed; regardless, even were this viewed as professional error, Petitioner has failed to establish prejudice. It was not unreasonable for the state courts to conclude that even if these witnesses had testified, the testimony would not have changed the outcome of the proceedings because the witnesses were intermittently absent during the conversations. Petitioner fails to establish whether these other witnesses were present at the time the statements in question were made and in what way their account differed from Shelton's testimony. Thus, the testimony would not have undoubtedly changed the outcome of the proceedings. Furthermore, other evidence in the record suggests that Petitioner made incriminating statements, including Eisenbeis's statements that Petitioner himself confessed that he "popped David." (R. 13-3, at 39).

Petitioner has provided three affidavits in support of his prejudice argument. (*See* R. 1-6). These affidavits are unpersuasive. First, these affidavits each make the same blanket statement: "at no time did I hear [Petitioner] make any statement that would have led me to believe he had shot David Gorley." Each fails to provide any details about what was said, when each affiant was present, or how Shelton's testimony was false. In sum, they do not demonstrate that the proceeding's

outcome would have been different.[13]   Therefore, Petitioner has failed to establish the prejudice

prong of the *Strickland* standard.

### 2.    Counsel's Alleged Failure to Cross-Examine Eisenbeis

Although not raised in his petition, Petitioner argues within his supporting memorandum that

counsel was also ineffective for failing to effectively cross-examine Eisenbeis.  (R. 1-1, at 33).

Specifically, Petitioner complains that counsel did not impeach Eisenbeis with his inconsistent

statements nor vigorously challenge his testimony, which effectively left the jury no choice but to

accept his testimony.

The Kentucky courts addressed Petitioner's argument.  The trial court concluded that defense

counsel's decision "not to read statement after statement from Mr. Eisenbeis, indicating that Doug

Williams was a party to the crime, was sound trial strategy."  (R. 13-4, at 49).  The Kentucky Court

of Appeals agreed, stating:

> While Eisenbeis's statements may have changed, Williams sets forth in his
> own memorandum that the Commonwealth's attorney who prosecuted the case
> explained to the jury that Eisenbeis was not credible in that there were numerous
> inconsistencies in his statements. Given the jury's awareness of Eisenbeis's lack of
> veracity, we cannot conclude that they would have held differently had they had other
> versions of his statements. Thus, we find the trial court did not err in denying
> Williams's motion on this issue.

(R. 13-5, at 60).

The decisions of the Kentucky courts were not contrary to, nor an unreasonable application

of, federal law.  As reflected by the state court decisions, a court's review of counsel's strategy and

---

[13]Furthermore, one affiant is Delana Smith (R. 1-6, at 3), who Petitioner concedes testified at trial.
(*See* R. 1-1, at 19).  Her recent claim that she heard nothing that would make her believe Petitioner shot
Gorley is directly contradictory to her statements that Petitioner told Smith he took care of the gun and that
Gorley was a dead man.  (R. 13-3, at 41).  These statements, while not direct confessions of guilt, are
certainly incriminating when considered in the context of the conversations.

tactics should be "highly deferential." *Strickland*, 466 U.S. at 689. Counsel's decision not to highlight each inconsistency within Eisenbeis's testimony did not fall below the objective standard of reasonableness required for effective assistance of counsel, especially considering that the jury was already aware of Eisenbeis's lack of veracity. This knowledge allowed the jury to appropriately weigh his credibility without the introduction of the inconsistent statements. The record reflects that counsel was active and zealous in his representation of Petitioner, as demonstrated by his continuous objections to the evidentiary issues. Therefore, the state court decisions were not contrary to, nor an unreasonable application of, federal law, and Petitioner's claim fails.

### D. Cumulative Error Claim

Petitioner's final claim for relief is that the cumulative effect of the constitutional errors resulted in an unfair trial. However, in the Sixth Circuit "cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams*, 460 F.3d at 816. Furthermore, as Petitioner has failed to establish that any constitutional errors occurred, there can be no cumulative error claim. *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (noting that a petitioner's "cumulative-error claim therefore fails because there are simply no errors to cumulate").

Although Petitioner argues that the Kentucky courts found that errors did occur in his case, he fails to acknowledge that these errors were deemed harmless and therefore did not affect the outcome of the trial. As they did not affect the trial's outcome, they could not have rendered the trial fundamentally unfair as required to establish this claim. Moreover, Petitioner relies only on cases outside of the Sixth Circuit in support of his argument. As stated above, the Sixth Circuit does not recognize this claim as a basis for habeas relief. Therefore, his claim fails.

## IV.     Certificate of Appealability

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. A certificate may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Petitioner's § 2254 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is further recommended that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

## V.     Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED** that:

(1) The United States's Motion to Dismiss, or in the alternative, Motion for Summary Judgment (R. 19) be **granted**;

(2) Petitioner's § 2254 Petition for Writ of Habeas Corpus (R. 1) be **denied;**

(3) A Certificate of Appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter; and,

(4) This action be **stricken** from the active docket of the Court.

Objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of the same or further appeal is waived. *See* Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Rule Fed. R. Civ. P. 72(b).

Dated this 24th day of February, 2011.



**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**

G:\DATA\habeas petitions\2254 General\09-388 Williams-v-EKCC.wpd